Fourth and final case of the day, 23-10678, Albert v. Aguirre. We have Ms. Swan and Mr. Counts here for the appellant, Mr. Anderchik here for the appellees. This is Law Student Day in the 11th Circuit. We have two more law students presenting argument this morning. Welcome. Ms. Swan, are you planning to go first? I am. Very well. Good morning, Your Honors, and may it please the Court. My name is Allie Swan, and I, along with my co-counsel, Mr. Dalton Counts, represent the appellant, Mr. Brian Albert. Your Honors, this Court has already decided that Section 309, not Section 302, governs this case. But on remand, the Court below addressed a Section 302 analysis in 309's clothing by invoking a necessity requirement that has no place in Section 309's text. Can I ask you a quick question? Yes, Your Honor. So I know that the focus of the briefing is about necessity. Do you agree that 309, that the 309 analysis properly entails a rule against fundamentally altering the assessment? Explicitly, no, but like sort of necessarily, implicitly, do you agree that it entails that requirement? We do, Your Honor. We agree that necessity is not part of the test, but undue burden and fundamentally alter is. The standard that we ask this Court to articulate— So let me ask you this. If you agree that there's a prohibition on fundamentally altering the assessment under 309, I think you're right about that. How is this not a fundamental alteration of the assessment? If, you know, you've got testimony from the other side that says, look, this is necessarily a test to assess your ability to make snap judgments, and you've simply got to know the stuff cold. How is it not a fundamental alteration of that assessment to say, oh, you can peruse your textbook? Well, Your Honor, I would like to direct this Court to the fact that the summary judgment standard has not been met here, and that the evidence that we have about the exam comes from an interested witness, and that all the evidence about the fundamental alteration or undue burden that an open book accommodation would provide is conclusory. But, I mean, don't we, in litigation, I don't know, for the last thousand years, haven't there been interested witnesses? I mean, that's not a prohibition on the admissibility, even at summary judgment, of a witness's testimony, right? Not always, Your Honor. You know, if the fact isn't disputed, is there a factual dispute from your client that my characterization, making snap judgments, is important to this assessment? No, Your Honor. In this case, Dr. Moore's testimony and the fact that Mr. Albert has received open book arrangements in the past create an issue of fact that contradicts what Mr. Oxman said in his declaration about whether an open book examination would fundamentally alter the nature of what the CAMS exam purports. Just one answer. Why is the fact that he received open book assessments for other examinations, why does that have anything to do with whether an open book would fundamentally alter this examination? Your Honor, the regulations interpreting section 309 commands that testing entities give deference to past accommodations or consider them in order to make an arrangement that best ensures that the current examination will test the taker's ability rather than disability. But to Judge Grant's question, what do we know about the other tests, the other assessments with respect to which he was given open book accommodations in the past, and that would bear on the fundamental alteration of this different assessment? Your Honor, all we know is that he was given these accommodations at the University of Northern Iowa. There is no evidence in the record that should specifically show what the tests were. But as the regulation says, they should be given deference and weight in similar testing situations. And you just said you can't provide us that, whether or not the testing situation was similar in Iowa as compared to here. That's correct, Your Honor. We don't have specific evidence. But if we look to what a traditional undergraduate exam looks like, it could include multiple choice questions. Well, we don't know. Again, we can't even say it was a traditional test environment because we don't know. That's correct, Your Honor. But this Court should still give weight to that. Then why? Why are we giving weight to the fact that he was given, allowed an open book for a test We don't know anything about the test. At least I'm not aware of any other accommodations that were provided. And I'm also not clear on why it had to be open book. I mean, it seems like he was given a lot of other accommodations. And even if the reasonableness standard is the leading standard and the only consideration, I'm still not clear on why that wasn't reasonable, what he was already given. Well, Your Honor, I would first like to start with your statement about the reasonableness standard. And we can agree that reasonableness is part of the test. It must not unduly burden the testing administrator. And it must not fundamentally alter the nature of the exam. But the test that we argue for today is the best insured standard. And importantly, we ask this Court to articulate the best insured standard, as a majority of other courts have done, and send this case back for remand. Could you explain to me why did it have to be open book? And I don't want to get hung up on something that might not be that relevant. But that's the only reason why we're here today. So what would an open book, given him, that he otherwise wouldn't have been able to have, especially given the defendant's argument as to what the test was really supposed to  Yes, Your Honor. So looking to the text of 309, it provides for the phrase alternative accessible arrangements. This is notably different than other parts of the ADA. And the Third Circuit in Doe defined alternative accessible arrangements as removing disadvantageous features for individuals with disabilities, so they can take a standardized examination without the features that disadvantage them. This best ensures access. Dr. Moore's recommendation and Mr. Albert's past arrangements at the University of Northern Iowa suggest that he is disadvantaged by the element of standardized testing that requires recalling information from memory while under stress. But the exam was intended to test working knowledge and competency without reliance on external materials. So it seems that anyone would be disadvantaged by not having access to all the materials, right? So why wouldn't that fundamentally alter the test to give one person access to these materials? Not necessarily, Your Honor. It depends on the circumstances of the case. And this is a fact-specific and plaintiff-specific inquiry that the district court neglected. Instead, it credited evidence that is favorable to ACAMS, that comes from an interested witness, and that is conclusory. Thus, this court should not accept that as fact. And this court should reverse and remand and articulate the proper best ensured standard. Okay. Thank you very much. Thank you. Ms. Swan, Mr. Counts, you're up next. May it please the Court. My name is Dalton Counts, and I also represent Mr. Brian Albert. To pick up where Ms. Swan left off, Your Honors, I think a lot of your concerns are directly tied straight to the issues. We see that we don't know a lot about this test because of the summary judgment standard. And despite seven years of litigation, Mr. Albert has never had the opportunity to have his claim heard under the proper Section 309 framework. Despite constantly litigating this, already before this Eleventh Circuit and two times the district court, the facts have not been properly applied under Section 309. But it sounds like there might be some raging agreement about the fact that fundamental alteration is a piece of the analysis here. So can you explain why you think this accommodation wouldn't fundamentally alter the assessment? If, as Judge Grant just read you from the record, I was using my own paraphrased snap judgment, but Judge Grant just read you from the record what the test is designed to assess, so how would an open book format not fundamentally alter that purpose of the assessment? Your Honor, Judge Grant is correct, and fundamentally alter is still a part of this test. And we see from Dr. Moore's testimony, the specific part, because of his ADA qualified disability, is his recall and his application to those specific facts. And based on Mr. Ogson's declaration, the recall and the application to an anti-monetary laundering specialist is part of this test. So based on the alternative accessible arrangement definition and the best insurer standard from the regulations, we see that it's supposed to allow disabled people who are disadvantaged by that part of the test to take it without that advantage, and that's what Congress intended. So hypothetically, this is not my example, it's one of my brilliant law clerk's examples, but a blind pilot. Is the blind pilot entitled to take a flying assessment using autopilot? No, Your Honor, they're not, because that's not an alternative accessible arrangement for the aids. Or might one say, no, because that fundamentally alters the nature of the assessment, like you've simply got to be able to see the land of the plane, like, you know, we need people to be able to see the land of the plane. And so taking the sightedness out of the assessment fundamentally alters the nature of the assessment. Yes, Your Honor. That would be not qualified under Section 309 if it wasn't tested. And how is this one different, if we take the purpose of the assessment to be one's ability to make judgments quickly? Without looking at materials. Without looking at the stuff. Right? I mean, here's the thing. I think every one of my law school exams was open book, but you know why? Because they weren't testing my ability to give the answer in three minutes. Yes, Your Honor, and that's correct, and that's part of it. Well, first, I would rely on the summary judgment standard, as we only have interested witnesses' testimony. It is different from that analysis, and I think it would be closer to the Shywitz v. American Board of Psychiatry and Neurology in that instance. In that case, a student tried to completely not take the exam, and that would be more in line with your flight example, Judge Newsom. That's not the same case here, as he has Dr. Moore, who has specifically shown that his test that his disability is a disadvantage to him for that recall and application of those facts. But then the doctor didn't say, and therefore this is necessary. I mean, helpful seems even the lower standard than necessary, and that's all that the expert report shows. Yes, Your Honor, that's correct, and she wasn't required to say necessity. As we've well established, necessity is not part of the 309 analysis, and even if it was, Judge Abudu, that is a jury question and a factual inference to decide if Dr. Moore So you're saying helpful is the same as reasonable, then, if we move away from necessary, which I appreciate that point. You're equating the language in the report of helpful is the same as reasonable, and therefore this accommodation should have been provided. Your Honor, helpful is in line with the phrase directed by Congress and from the plain text of Section 309 on an alternative accessible arrangement. If we look just at that definition, we see that that is all Dr. Moore was required to do, and it's important to note that is really all that ACAMS is asking Mr. Albert to do is looking at what disadvantage he has based on his ADA qualified disability, which is not in dispute, applying to those specific facts. As Ms. Swan mentioned, this is an individualized inquiry into each individual test taker and into each individual test. We see that through the Rodden decision at the circuit court level for the Third Circuit. They look specifically at the facts of that situation, which I believe was a medical board exam. These are different facts. This is not some professional licensing for a board exam or the bar exam, for example, for attorneys. This is a professional certification from a private situation, and using a necessity analysis even to begin with is improper as it denied Mr. Albert the proper framework for his Section 309 claim. It seems to me that in order to be certified for this particular task, this organization has determined that the person needs to be able to answer questions about that task without looking up the answers, right? Yes, Your Honor, and that may seem from Mr. Oxman's testimony, but as we've mentioned, that is from an interested witness, and there hasn't been any expert testimony directly to those facts. But there's not . . . I didn't see any expert testimony saying that that wasn't true or that that wasn't the purpose of the test. No, Your Honor, that wasn't from Mr. Albert, but that burden is not on him at the summary judgment stage. Well, it is your burden to dispute material facts, and if the fact . . . they've put on a witness, interested or otherwise, who says this is the purpose of the assessment. So don't you have some obligation at summary judgment to dispute that fact if you want to survive summary judgment? Maybe I'm misunderstanding. No, Your Honor, you don't, and I agree with that. But I also would say that Dr. Moore's testimony directly does dispute following the alternative accessible arrangement. If it's from the improper 309 framework, it doesn't, because that would require necessity. But if we actually look at alternative accessible arrangement, Dr. Moore's own statement conflicts with Mr. Oxman's testimony as it looks to best ensure that his abilities are tested rather than his disabilities. Okay. Thank you, Your Honor. Thank you very much. Mr. Andrzejczyk, let's hear from you. Thank you, Your Honor. May it please the Court. My name is Bill Andrzejczyk on behalf of the Association of Certified Anti-Money Laundering Specialists, LLC. I'm going to shorthand that ACAMS so that I don't use up my 15 minutes just saying that name over and over. Hearing the argument today, I think I would like to reset a little bit because I think there's been a few different iterations of the test put forward by Mr. Albert in his opening brief, reply brief, and then the supplemental authority that the Court received last week. And it sounds like we do have at least some agreement that Section 309 involves a reasonableness inquiry and it sounds like we have some agreement that there is also, albeit a burden on the institution, an inquiry into whether it would either fundamentally alter the nature of the exam or impose an undue burden. And so the district court on remand here issued an opinion. It was a different district judge that looked at it after remand. Can I ask you a quick question? Yes. Before we get sort of too carried away with the agreement as things stand here, where do you find a reasonableness requirement in 309? In 309 itself, the word reasonableness does not appear. So I think you're right about that. But for instance, I think that 309 is properly read to entail a fundamental alteration analysis even though those words don't appear there either. But I'm not sure that I read 309 necessarily to entail a reasonableness requirement. So there's two bases for it, Your Honor. One is in the cases that both sides have cited, including many of Mr. Albert's cases, that do point to a reasonableness inquiry. It is admittedly an implicit inquiry because the word reasonableness does not appear in Section 309. But I guess just from the language, like, are those other cases, because a concern here obviously, given the litigation history of this case, is that everybody just gets sloppy. We're used to 302 cases. We see a 309 case. We just drag 302 over to 309. But they're different texts, right? Right. And so is there a risk that the other courts are doing the same thing? They're just taking 302 stuff and plunking it down on the 309. And so, I mean, it seems to me like we've got to engage with the text of 309 to figure out whether or not, for instance, there's a reasonableness criterion buried in there somewhere and, for instance, whether there's a fundamental alteration criterion buried somewhere in there. I think there is as to the latter. I'm just not sure about the former. Yes. Well, Section 309 is very short, as Your Honor knows. So as far as buried within there, I have to go back to the fact that it's a common sense implicitness that has been interpreted throughout other portions of the ADA that both parties have cited, that a disabled individual is not entitled to the best, it is not entitled to their preferred, that a disabled individual is entitled to an accommodation that puts them on a level playing field with respect to their disability, given the exact test that is at issue. And one point that Mr. Albert has put forward a little more recently is this best-ensure standard. And to address that, that comes from 28 CFR 36.309. And while this Court is no longer, of course, required to give Chevron deference to that, those are rules that were promulgated, and both sides have cited those to the Court, and both sides have relied on those. And those have a number of requirements within them, and the Courts, again, very recently and for the past at least 10 years, have been interpreting best-ensure to mean reasonable. So it appears today, or at least in the most recent submissions, that Mr. Albert is asking this Court to apply a best-ensure standard and is getting that from 28 CFR 36.309. It's important to note that . . . Can I ask you one question about that, Reg? Yes. I thought I read in the briefs, maybe I'm misremembering, but I thought I read in the other side's merits briefs that we shouldn't get carried away with dysregulation because it refers to sensory, manual, or speaking skill assessments, which is not at issue here. So now has everybody kind of changed sides and they want the regulation and you're more skeptical of the regulation? So we've never been skeptical of the regulation, but you took one of my talking points from me, Your Honor. The very last paragraph of Plaintiff's reply brief, when seeking to get rid of the fundamental alteration requirement, points out that there's a qualifier there for sensory, manual, or speaking disability and that Mr. Albert's disability is an anxiety disorder and it does not fit within those. Now ACAMS is not challenging the fact that Mr. Albert is disabled or that his disability requires a Section 309 analysis and accommodations, but there is no basis for that statement. There's no citation in the reply. There's no medical basis given, no evidence in the record that his disability does not fall within those three. And Your Honor is correct to point out those same three words, that same qualifier is attached to the best and sure standard. And so Mr. Albert can't have it both ways. He's either entitled to the best and sure standard, but he also, with that, the institution is allowed to show that his requested change would fundamentally alter it. Or he can argue that that entire code of federal regulations does not apply and goes back to just Section 309, but as both sides have argued and every other court that has looked at it, that gets us back to a reasonableness standard. But we are, I guess, to the other side's point, let's say that Mr. Albert had presented sufficient evidence showing, if not, that the Iowa tests in this one were identical, similar enough that the accommodation there, you all, or with the regulations, therefore, would have required you to place more weight on the fact that he had an open book test. I'm trying to understand if for this analysis that was irrelevant or was it that you all just didn't have enough information about the Iowa test to have it carry any weight? It's absolutely not irrelevant. It is one of four or five portions of the regulation that we argue do apply to this case and that the institution is supposed to give deference in similar testing situations. As the colloquy with the court and my colleague revealed, we all had different undergraduate experiences. We all had different types of tests during undergraduate. So, without that evidence, which is exclusively in Mr. Albert's possession, it is not in ACAM's possession, we can't tell that. And that was his burden to come forth with at the summary judgment stage. With respect to the decision on mandate, I do want to point out that, sorry, the decision on remand. The district court did address necessity. ACAM's is not asking this court to impose a necessity requirement in a section 309 analysis. But that was just one of three bases for the district court's decision. The first seven pages of the 20-page decision actually dealt with a reasonableness standard. The court cited several of the cases, including one of the supplemental authority cases that was submitted to the court this week. And the court cited the best and sure standard in its decision in making the reasonableness decision. And the third basis for the court's decision was, of course, the uncontroverted evidence that the test, if this accommodation was given open book, the test would be fundamentally altered. On that point, Mr. Albert's primary argument appears to be that, I guess it's twofold. Dr. Moore, who submitted a certification, contradicted Mr. Oxford's affidavit. I think the, sorry, Mr. Oxman's affidavit. The court already engaged in questions with that, and so I sense that the court has some familiarity on that piece. But the two pages which were reproduced in full in the lower court opinion and in our about Mr. Albert and did not state anything about the test itself. So all of Mr. Oxman's testimony about the test itself is uncontroverted. And of course, the court correctly recognized that simply because he is an employee does not make him an improper witness. There was one other piece that was not referenced in any of the briefs or the notice of appeal, and that was the lower court's decision, which has been, was taken from the Rodin decision, that academic institutions are afforded deference in how they, and how they give their examinations and proctor examinations, and that courts are not supposed to step in or overly step in in that, in the day-to-day of academic institutions. So this is not simply an interested witness and an affidavit. It is a deference that's supposed to be given to academic institutions, a witness who signed an affidavit. That same witness was deposed by special court permission after the close of discovery, after the summary judgment briefing was closed. That's docket 103 in the lower court because the lower court asked that the transcript be put on. And so Mr. Albert also had an opportunity to question Mr. Oxman about his affidavit and anything about that. He chose not to. The language in the transcript is, he says, well, you can have your 40 minutes back. I don't have any more questions. But he had every opportunity to come forward with anything to contradict that fundamental alteration aspect and was not able to. What do you think is the practical difference, if any, between 302 and 309? Of course, we do need to do the analysis under 309, but what do you and your clients see as the potential practical difference, if any, between those two standards? I believe that 309 is a little more specific as to institutions and to what it applies. And then I do think, at least as the courts have interpreted it, there is arguably a necessity requirement for 302. And that is not necessary, to use no pun intended, in Section 309. Let's say here, do you think that the answer comes out any different with or without a formal necessity requirement? Absolutely not. The district judge's opinion could have stopped at page 13, I believe it was, after the reasonableness analysis and this court would, it's a de novo standard, but this court should still affirm because the district court did not need to do a necessity analysis. Did you see that as an alternative ruling or as a part of one ruling? If I'm being fair, the court did frame it a little more closely to an element. But I don't think this court needs to decide whether or not that was error, or whether or not necessity needs to be in Section 309. Because as plaintiff has said numerous times, this is an individualized inquiry. And on these facts and this disability, the requested accommodation was not reasonable. And it would also fail because it would fundamentally alter the exam. So either of those two bases. Is that fundamental alteration why it's not reasonable? Or is it unreasonable for a different reason as well? So it is unreasonable for different reasons as well. There are, in this instance, there are four or five other accommodations that were court ordered that would specifically address Mr. Albert's disability. This requested disability would advantage Mr. Albert over others. The request here is to access content. I know the parties discussed in their briefs the exemplars, and they are exemplars. It's not an exhaustive list of the types of accommodations and auxiliary aids, both within the Code of Federal Regulations and the ADA's website. And they all have to do with temporal or locational challenges or delivery of the existing test material to that person in a way that they can take it in. None of them have to do with the type of change here, which would be giving additional information or additional resources to a test taker. One thing that's a little confusing about this to me is that the alternatives, the non-open book accommodations, I'll call them, the alternatives, they could be understood as part of a reasonableness calculus, or I guess they could be understood as part of a necessity calculus. I'm kind of like trying, I guess today is bucket day for me. I'm trying to figure out which bucket those alternative arrangements go in. They could. I believe the proper test is for a reasonable analysis, and that has the benefit of this court not having to opine as to whether they are part of a necessity analysis. But Your Honor's point in that it's a little tricky is probably why we see the district court in this case, the district court in the Rodin matter, which got affirmed, by the way, despite conducting a necessity analysis. And one of the new cases that, it's not new, it's a 2011, but one of the cases that plaintiffs submitted as supplemental authority, the Enyart case also looked at whether it was the only way that the plaintiff could take the test. So we do see courts undertaking a necessity analysis in addition to reasonableness, if I may finish my thought. It appears, without getting into the judge's minds, that they are doing so as a backstop and also make sure, okay, we looked at reasonableness, but if this is the only way that this person can take this test without altering it, then you bleed into necessity. And so that's, I think, why we see courts looking at that. But it is not a requirement of 309, and it's not a requirement of this court to place that on 309 to affirm this decision. Thank you. Very well. Thank you very much, Mr. Andrzejczyk. Mr. Count, you've got rebuttal, correct? Two minutes. What about, by the way, my question about the reg? Did I read correctly your briefs to say don't pay attention to that reg because it deals with sorts of assessments that are not at issue here? Yes, Your Honor. That can be a consideration for this court, is that it directly deals with those sensory disabilities or those other speaking disabilities. And just based off what Dr. Morris said, Mr. Albert's ADA-qualified disability is not necessarily in line with those. We use reasonability as an overall arching test for all legal standards. We're not going to advocate for an unreasonable accommodation, per se, which is why I cited the Shywitz case from the Southern District of New York, where there is an unreasonable accommodation. However, a key issue with ACAM's argument this morning and their overall argument is that this court could have already wrote the opinion they advocate for. We see in the original 11th Circuit opinion, on page 2, they cite Doe from the 3rd Circuit and they cite Inyart from the 9th Circuit, which explicitly looks at rejecting any sort of necessity requirement or 302 from the original District Court opinion. And that original District Court opinion relied on PGA TOR v. Martin to decide the elements of a 309 claim. So we've well established this morning that was incorrect. Nevertheless, if we look at the current District Court that's on appeal this morning, they exact same test on pages 8 and 9 and cite PGA TOR v. Martin, the Supreme Court of the United States case, on section 302 again. So to the extent that reasonableness and those regulations are important to this court's analysis, we should look at that. However, we can remand just on the mere fact that this court has already decided 309 needs to be well established and the District Court refused to do it once again. Well, but would we need to remand if we think the District Court's judgment is correct for some other reason, either because it, you know, sort of elides a fundamental alteration criterion or otherwise? Like, just because it wrote the wrong thing on the page, if the judgment line is correct, then we affirm, correct? No, Your Honor, for two reasons. Number one, because this court has already decided when necessity is part of the test, as it was in District Court, it should be remanded for proper analysis. Number two, I would be aware of a wrought-in type decision. As my opposing counsel said earlier, when we look at the Third Circuit, I see my time has expired. That's okay. You can finish. So if we look at the Third Circuit's opinion in wrought-in, it does not use a necessity analysis. There are a few key distinctions. First, Mr. Wrought-in was not qualified as a disabled person underneath the ADA. But number two, they go a step further and define what the best-insured standard is, and they use the best-insured test on appeal for the Third Circuit decision. We believe that was error for the Third Circuit, as it has caused massive confusion. For example, a District Court in this very same circuit, and in this very same case, used wrought-in one, the District Court opinion, to define Section 309. That was error, and remand is appropriate for that reason. Can I just ask, so I'm still struggling, and I, again, trying to also be disciplined and not blurring the lines between necessary and reasonable, but I've been thinking about Judge Newsom's hypothetical with the pilot. In that case, it sounds like the pilot would become disqualified, because if sight is a requirement and they can't see, an autopilot is not going to cut it. But in this case, since we're not talking about necessity, we're talking about reasonableness, if the denial of the request does not disqualify the person, is that enough to uphold it as perhaps reasonable, but outweighed by the other side's concerns about the test itself? Yes, Your Honor, I think so. And as I try to answer Judge Newsom's question, the pilot hypothetical would be in line with the Shiloh's decision, where it would be unreasonable, and it would not be an alternative accessible arrangement. Mr. Albert has shown why this is an alternative with Dr. Moore's statement. Is that responsive, Your Honor? I accept your response. All right, very well. Thank you both. And again, I'll just note for the record, Ms. Swan, Mr. Counts, both law students, very well done. Thank you for your presentations. That case is submitted, and court is in recess until tomorrow morning at 9 a.m. All rise.